1330 CONNECTICUT AVENUE,
INC., Petitioner,

v.

DISTRICT OF COLUMBIA ZONING
COMMISSION, Respondent,

and

1300 Connecticut Avenue Joint
Venture, Intervenor.

No. 93–AA–752.

District of Columbia Court of Appeals.

Argued Oct. 27, 1994.

Decided Dec. 29, 1995.

---

Howard H. Stahl, Washington, DC, with whom Evan T. Barr and Phil T. Feola, were on the brief, for petitioner.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, with whom John Payton, Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Stephen N. Gell, Washington, DC, for intervenor.

Before WAGNER, Chief Judge,
FARRELL, Associate Judge, and LEVIE,* Associate Judge of the Superior Court of the District of Columbia.

WAGNER, Chief Judge:

Petitioner, 1330 Connecticut Avenue, Inc., appeals from an order of the District of Columbia Zoning Commission (Commission), dated May 10, 1993, granting intervenor, 1300 Connecticut Avenue Joint Venture, a modification to a Planned Unit Development (PUD) without petitioner's consent.[1] Petitioner is the ground lessee of the land de-scribed as lot 803 in square 138 and the owner of the building located thereon known as 1330 Connecticut Avenue. Intervenor owns lot 803 and lot 804, as well as the building located on lot 804 described as 1300 Connecticut Avenue. Petitioner's principal argument on review is that, contrary to the Commission's determination, the District of Columbia zoning regulations require that petitioner be joined in any application to modify the PUD because of petitioner's ownership interest in property within the PUD. Therefore, petitioner contends that the Commission erred in processing and approving intervenor's application for modification of the PUD without petitioner's consent. Petitioner also contends that the Commission violated the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1503, –1509, and –1510 (1992) (D.C. APA), and petitioner's due process rights by failing to follow the Commission's own regulations governing applications for PUD modifications. We conclude that the Commission did not err in approving intervenor's application to modify its building in the PUD without the consent of petitioner, the owner of a separate building in the same PUD. Finding no basis for reversal of the Commissioner's decision, we affirm.

I.

The original PUD was approved by the Commission in 1979 upon an application filed by the International Association of Machinists (IAM), which was then the sole owner of lots 803 and 804 and the building at 1300 Connecticut Avenue (IAM building). The original PUD authorized the construction of a new office building on the vacant lot 803, which is adjacent to the IAM building, consistent with architectural plans submitted to the Commission.[2] Thereafter, the IAM entered a long-term ground lease for lot 803

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

1. A planned unit development is described in the regulations as a process
> designed to facilitate the development of well-planned residential, institutional, commercial, and mixed-use developments, industrial parks, urban renewal and community development projects, or a combination of those developments and projects in any or several zoning districts.

11 DCMR § 2400.1 (1994).

2. The land is described in the original PUD order as lots 800, 801 and 8–12 in Square 138.

(50 years with two twenty-five year options) with petitioner's predecessor, the Miller Companies (the developer), which developed the property. In 1988, the developer sold its leasehold interest in lot 803 and its fee simple interest in the building it had constructed thereon at 1330 to petitioner. In 1991, the IAM sold its interest in the real property, including the lease with petitioner, to the intervenor. In 1980, IAM filed an application for modification of the previously-approved PUD in order to effect a reconfiguration of the building at 1330 "within its approved envelope" and to make certain changes in its facade. The Commission granted approval of the modifications on March 12, 1981. On May 11, 1992, the Commission granted intervenor's application for modifications of the PUD for renovations at the IAM building by order no. 297–A. The lessee of lot 803 and the owner of 1330 Connecticut were not joined in any previous applications related to the PUD.

The present case originated when intervenor filed an application with the Commission for modification of the previously-approved PUD (as modified), to change the slope of the loading ramp, build a loading platform, and eliminate six parking spaces at the IAM building. The loading berth serves as a parking ramp to the six basement parking spaces in the IAM building. Intervenor proposed no changes in petitioner's building at 1330. The original PUD provided for a maximum of 220 parking spaces in petitioner's building and six in the IAM building. The original PUD approvals permitted no alterations to the IAM building except doorways between the building and the new office building to be constructed at 1300. The IAM building had been built as a matter of right in approximately 1956.

In the proceedings before the Commission, petitioner filed a motion and a supplemental motion to dismiss intervenor's application for modification of the IAM building, contending that the case was not properly before the Commission because petitioner, as the owner of the leasehold interest in lot 803 and the building at 1330, was required to be joined in any application. It also challenged the modification order no. 297–A entered in May 1992.

Petitioner contended that the proposed change in the grade of the loading berth would have a negative impact on the operation of its building.

The Commission held a public hearing on intervenor's application. Petitioner's counsel argued at the hearing that the PUD included not only the applicant's (intervenor's) property, but also petitioner's property. Petitioner contended that the original PUD was "planned and processed and approved as a single application." Petitioner further contended that the PUD had two different owners and that the two buildings owned by petitioner and intervenor constituted a single building under the Zoning and Building Codes.

During the hearing, a Commission staff person explained the Commission's practice concerning who must submit an application for modification of a PUD as follows:

> As to the ownership of the property, it has been the practice of the Zoning Commission to notify all landowners associated with property. That has always been the case. As Mr. Gell [intervenor's attorney] has indicated, we do use [the records of the Department of] Finance and Revenue, and their property owners are referred to as the actual landowners.

Counsel for the petitioner remarked that "a very technical reading of the regulation suggests for only persons with leases in the building to have notice." However, he conceded several times that the issue was not about notice, but rather about "how to integrate the PUDs," and who has the right to file for a modification of the PUD. Petitioner's counsel stated that they were prepared to proceed that evening as a party to the case and they were not prejudiced thereby. Petitioner called witnesses, including an expert witness, to testify on its behalf.

The District of Columbia Office of Planning (OP), in a written memorandum and in testimony presented at the hearing, recommended approval of the application. Petitioner presented the testimony of George Carras and Susan Burke, respectively the managing director and vice-president of JMB Institutional Realty Advisors, Inc. (JMB), petitioner's investment advisor and managing

agent. Petitioner also presented the testimony of John Andrus, a senior associate with Gorove/Slade Associates, JMB's transportation consultants. Petitioner's witnesses supported its contentions that intervenor's proposed modifications would pose significant traffic risks.[3] They also objected to the conversion of the IAM building from single-tenant to multi-tenant.

The Commission concurred with the recommendations and positions taken by the intervenor and the OP in concluding that intervenor's requested modification of the PUD carried out the purpose of the zoning regulations. Among the Commission's conclusions of law were the following:

1. The planned unit development process is an appropriate means of controlling development of the subject site because control of the use and site plan is essential to ensure compatibility with the neighborhood.

2. The modification of this PUD carries out the purpose of Chapter 24 of the Zoning Regulations, which is to encourage the development of well-planned residential, institutional and mixed-use development which will offer a variety of building types with more attractive and efficient overall planning and design not achievable under matter of right development.

3. The modification of this PUD is compatible with the city-wide goals, plans and programs and will not change the overall nature or character of the original PUD.

4. Approval of this PUD modification is not inconsistent with the Comprehensive Plan for the National Capital, as amended, ... [or] with the purposes of the Zoning Act.

5. The PUD modification can be approved with conditions which ensure that the development will not have an adverse effect on the surrounding community, but will enhance the neighborhood and ensure neighborhood stability.

6. Approval of this PUD modification will promote development in conformity with the entirety of the District of Columbia zone plan as embodied in the Zoning Regulations and Map of the District of Columbia.

The Commission denied petitioner's motion to dismiss for the following reasons:

1. The previously approved modifications are not a part of this application and are not before the Zoning Commission for action;

2. The Zoning Commission may hear an application involving one building in a PUD without seeking permission of the owner of another building in the same PUD; and

3. 1300 Connecticut Avenue Joint Venture and 1330 Connecticut Avenue Inc. are not co-tenants.

The Commission approved the modification to the previously approved PUD at 1300 Connecticut Avenue, N.W. subject to several conditions, including the adoption and observance of a management plan for the operation of the loading berth.

## II.

Petitioner argues that the Commission erred in processing and approving intervenor's application for modification of the PUD

---

3. JMB's testimony was summarized in the Commission's findings of fact as follows:

 a. JMB objects to the conversion of 1300 Connecticut Avenue from a single-tenant to a multi-tenant building and to the modifications of the loading dock that will accommodate large trucks;

 b. JMB has an 85-year ground lease with the option to purchase the land under 1330 at the end of the ground leasing;

 c. While 1330 Connecticut Avenue has three sizable loading docks accessed via N street, the request of 1300 Connecticut Avenue to have its single loading dock made fully operational poses significant traffic risks requiring a carefully coordinated traffic management plan jointly agreed upon by 1300 and the other buildings facing N Street;

 d. A wider curb cut is needed on N Street to allow trucks to pull in front-end first, rather than backup on N Street; and

 e. Curbside parking spaces on the north side of N Street should be eliminated to provide turning and loading spaces for 1300 Connecticut Avenue.

because petitioner, one of the owners in the PUD, had not consented to it. Specifically, petitioner contends that it has an ownership interest in the PUD by virtue of its long-term ground lease for lot 803 and its ownership of the building at 1330 located on the lot. It takes the position that the zoning regulations, policies, and objectives underlying the PUD concept require that parties with this type of an interest be joined in any application to modify the PUD. Intervenor responds that the PUD is comprised of two separate buildings, that the Commission followed its own regulations and practices in determining that petitioner is not an "owner of property" in the PUD which intervenor sought to modify, that petitioner's building is not included in the definition of "property included in the area to be developed," and that petitioner is not an "owner" of property in the PUD by virtue of its ground lease. Intervenor also argues that disputes between landlords and tenants as to rights under a ground lease are matters for the court, not the Zoning Commission. We consider first the nature of petitioner's claim of ownership status before addressing its claim of right as a property owner to the status of applicant in the modification proceeding.

### A. The Nature of Petitioner's Ownership Interest

Petitioner argues that its fifty-year lease for lot 803, with two options to renew for an additional twenty-five years each, is equivalent to a fee simple interest in land. Indeed, as petitioner points out, there are purposes for which a long-term leasehold interest is considered or treated the same as real property. *See* D.C.Code § 45–201 (1990) (estates in land include estates for years); *Jacobsen v. Sweeney*, 92 U.S.App.D.C. 93, 202 F.2d 461 (1953) (leasehold for a term of years is a chattel real); *Camalier & Buckley v. Madison Hotel*, 168 U.S.App.D.C. 149, 156, 513

F.2d 407, 414 (1975) (lease for term of years form of ownership for term of the lease); *Lake End Corp. v. Township of Rockaway*, 185 N.J.Super. 248, 448 A.2d 475, 480 (1982) (99 year lease conveys ownership equivalent to fee simple); *Ocean Grove Camp Meeting Ass'n v. Reeves*, 75 A. 782, 784 (N.J.Super.Ct.1910) *aff'd*, 79 A. 1119 (N.J.1911) (a long-term lease in land, renewable in perpetuity, conveys ownership equivalent to fee simple). In the District of Columbia, for recordation tax purposes, a lease for a term in excess of 99 years is treated as real property. D.C.Code § 45–921(3) (1995 Supp.). The recordation requirement is the same for a deed as for a lease longer than one year, D.C.Code § 45–306 (1995 Supp.). As petitioner points out, the purpose of § 306 is to apprise interested parties of the status of the interests in the real property. *See* D.C.Code § 45–801 (1990); *Smart v. Nevins*, 298 A.2d 217, 219 (D.C.1972); *Fitzgerald v. Wynne*, 1 App.D.C. 107, 121 (1893).[4]

Petitioner also contends that, even if its long-term ground lease is not considered an ownership interest in the PUD property, its fee ownership of the improvement on lot 803 constitutes an ownership interest in the PUD. For real estate tax purposes, real property is defined as "real estate identified by plat on the records of the District of Columbia Surveyor according to lot and square together with improvements thereon." D.C.Code § 47–802(1) (1990).[5] Improvements on land are taxable as real property in the District of Columbia. *1111 19th Street Assocs. v. District of Columbia*, 521 A.2d 260, 268 (D.C.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *see* D.C.Code §§ 47–821(a), –823 (1990 and 1995 Supp.).

It is clear that petitioner has an ownership interest in the ground lease which is treated as real property, at least for certain pur-

---

4. Petitioner also cites authorities from other jurisdictions which accord a lessee rights equivalent to those of a fee simple owner in other circumstances. *See Texaco, Inc. v. Frey*, 66 Misc.2d 117, 320 N.Y.S.2d 340, 341 (N.Y.Sup.Ct.1971) (lessee has same right as owner to apply for building and related permits); *Jewish Bd. of Fam. & Child. Servs. v. Zoning Bd.*, 135 A.D.2d 859, 522 N.Y.S.2d 951, 952 (1987) (lessee has

right to apply for building permit or variance), *rev'd and judgment of Supreme Court reinstated*, 73 N.Y.2d 734, 535 N.Y.S.2d 592, 532 N.E.2d 98 (1988).

5. The statute requires that the real property be assessed with the value of the land and improvements identified separately. D.C.Code § 47–821(a) (1990).

poses, and that petitioner owns the building on lot 803. Nevertheless, the question remains whether the petitioner's long-term leasehold interest in lot 803 and its ownership interest in the improvement thereon confer upon petitioner the right to be joined in any application for modification of a separate building on a different lot within the PUD. In determining the answer to this question, consideration must be given to any applicable zoning regulations and to the Commission's practices and procedures.

## B. *The Zoning Regulations*

Petitioner argues that the Commission's regulations require that (1) each owner in the PUD sign any application and that (2) an application "shall not be processed until the application is complete." 11 DCMR § 2404.3 (1994). Therefore, petitioner contends that each owner within a PUD must consent by signing the application before it can be considered to be complete for processing. Intervenor argues that, since there are no regulations to the contrary, the Commission's practice of limiting the authority to sign applications to the owners of the land to be developed or the property to be modified within the PUD should be controlling. Thus, intervenor contends that petitioner is not an owner of property to be developed within the PUD for purposes of a request of an owner to modify only its solely-owned building. We consider these issues in light of the applicable regulations and the referenced agency practices.

Ordinarily, the PUD process occurs in two stages. 11 DCMR § 2402.1 (1994). The first stage involves a general review of the site for use as a PUD; the second involves a detailed site plan review for compliance with the intent and purposes of the PUD process.[6] *Id.* Applications for modifications to the PUD must "meet the requirements for and be processed as a second-stage application." 11 DCMR 2407.9 (1994). The regulations contain no notice provisions addressed specifically to applications for modification. However, during the initial application process, the regulations provide for the application to include the name, address, and signature of each "owner ... of property included in the area to be developed." 11 DCMR § 2404.5 (1994). Petitioner contends that these regulations require that each owner of property within the PUD be included in every phase or type of PUD proceeding and that the process must be terminated if any owner within the PUD does not consent to the application for modification.

The Commission has not interpreted its regulations and authority to act on an application for modification in accordance with petitioner's position. First, the Commission has limited "ownership" to mean the owner of land. At the public hearing in this case, the staff explained that the Commission's consistent practice has been to have an applicant request a list of property owners from the Department of Finance and Revenue. That department furnishes a list of persons responsible for real estate taxes, who are typically the owners of the land.[7] Petitioner does not deny that intervenor owns all the land in the PUD and that petitioner only leases the land upon which its building is situated. Thus, despite petitioner's significant leasehold interest in the land, the Commission's interpretation of "owner of property in the area to be developed" as owner of the land as designated on the records of the tax assessor, would not include petitioner.

Moreover, the Commission ruled in this case that an application for modification of one building may be considered without the other owners in the PUD joining in or consenting to it. Section 2404.5 of the regulation requires that an application contain the signature of "each owner ... of *property included in the area developed*" (emphasis added). The terms "owner" and "property included in the area to be developed" are not defined in the regulations. "[E]ach owner

---

6. An applicant may file a single application for consolidated review. 11 DCMR § 2402.2 (1994).

7. The Commission's staff explained:
    As to the ownership of the property, it has been the practice of the Zoning Commission to notify all landowners associated with the property. That has always been the case. ... [W]e do use [Department of] Finance and Revenue, and their property owners are referred to us as the actual landowners.

... of the property included in the area to be developed" could refer to each owner within the PUD or only to each owner of the specific property that is the subject of development or of a modification request. The Commission's practice has been to require only the signature of the record owner of the property to be developed or modified. For purposes of a modification within a PUD, the Commission's practice has been to limit the definition of owner within the area to be developed to include only the owner of the particular property that is the subject of consideration. Consequently, the signatures of other owners within the PUD have not been required on an application to modify a property within the PUD.

The regulations insure, however, that other owners within the PUD or neighboring owners will not be foreclosed from participating in the proceeding in order to protect their interests. There is a separate provision for notification of neighboring property owners, 11 DCMR 3013.6 (1994).[8] Moreover, affected parties, other than the applicant, may participate as parties under § 3022.3 (1994) of the regulations. Such parties may be represented in the proceeding by counsel, present witnesses and otherwise demonstrate how they will be affected by action on the pending application. *Id.*[9]

8. Section 3013.6 provides in pertinent part as follows:

When the Commission has determined that an application or petition will be processed in accordance with the provisions of § 3022, the supplemental information filed shall also include the following:
(a) The names and addresses of the owners of all property located within two hundred feet (200 ft.) of the subject property; and
(b) The name and address of each person having a lease with the owner for all or part of any building located on the property involved in the application.

9. There appears to be an anomalous result in the application of § 3013.6 using the Commission's interpretation of owner in petitioner's case. In interpreting owners of the property to refer to landowners as reflected on the records of the Department of Finance and Revenue, petitioner would not be entitled to notice under § 3013.6(a) as lessee of lot 803. (See note 8, *supra*). That prospect may not be particularly troublesome, since petitioner should be able to look to its lessor to protect its rights under the terms of the

## III.

This court defers to the interpretation by the agency of its own regulations "unless plainly erroneous or inconsistent with the regulations." *Smith v. District of Columbia Bd. of Zoning Adjustment*, 342 A.2d 356, 360 (D.C.1975) (citing *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 320 A.2d 282, 286 (D.C.1974)); *Dell v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 102, 106 (D.C.1985). Absent some compelling indication that the interpretation is erroneous, we are bound by the agency's construction of its own regulations. *Smith*, 342 A.2d at 360; *Hoeber v. District of Columbia Redevelopment Land Agency*, 483 F.Supp. 1356, 1364 (D.D.C.1980). An agency may regulate through contested proceedings. *Blagden Alley Ass'n v. District of Columbia Zoning Comm'n*, 590 A.2d 139, 146 (D.C. 1991) (citing *Capital Hill Restoration Soc'y v. District of Columbia Zoning Comm'n*, 380 A.2d 174, 179–80 (D.C.1977)). An agency's administrative practices also are entitled to considerable weight in interpreting its statutes and regulations. *Hoeber*, 483 F.Supp. at 1364 (quoting *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 800, 13 L.Ed.2d 616 (1965)). "When the construction of an administrative regulation rather than a statute is in issue,

lease. However, as owner of the building at 1330, petitioner does not appear to be entitled to notice under § 3013.6(b), which covers only persons having a lease with the owner. Thus, in spite of its ownership in the adjacent building and its interest in the ground lease, petitioner's circumstances are not necessarily covered in § 3013.6, given the Commission's interpretation of owner. In this particular case, petitioner conceded that notice is not in issue. It had notice and was afforded an opportunity to participate fully in the proceedings. Therefore, we have no occasion to address as an issue in this case the validity of this particular notice provision of the regulations as interpreted by the Commission. However, it appears that the Commission would be well advised to consider and address, through regulations, the potential problems of notice for those in petitioner's peculiar circumstances. For purposes of this case, our central focus is the reasonableness of the Commission's interpretation of "owner of the property in the area to be developed" in the context of a modification proceeding. Our recognition of this potential problem with § 3013.6 does not alter the result in this particular case.

deference is even more clearly in order." *Udall,* 380 U.S. at 16, 85 S.Ct. at 800. Our disposition of the issue raised by petitioner is guided by these principles.

■ Here, the Commission's interpretation of its regulations to require the application for modification to be signed only by the owner of the property sought to be modified is not an unreasonable construction. The language of the regulation, which requires the signature of an owner of "property included in the area to be developed" is not inconsistent with the agency's interpretation. Even assuming that the language is susceptible to another interpretation, that would not be a basis for rejection of the Commission's interpretation. *See Udall, supra,* 380 U.S. at 16, 85 S.Ct. at 800 (to sustain an agency's application of statutory term, its construction need not be the only reasonable one). The Commission's interpretation also comports with its past practices, a factor entitled to deference. *See Hoeber, supra* 483 F.Supp. at 1364. The Commission has other mechanisms for assuring that consideration will be given to the effect of any proposed modifications upon neighboring property owners without interpreting the regulations as petitioner suggests. Moreover, to permit other owners within the PUD to veto a request for modification of another owner's building by simply withholding their signatures to the application would foreclose the Commission's consideration of proposals which might further the statutory and regulatory objectives and purposes involved in derogation of its responsibilities under the statute. There is no indication that the Commission's interpretation and practices are plainly erroneous or inconsistent with its regulations; therefore, we defer to its interpretation. *Smith, supra,* 342 A.2d at 360. Since petitioner was not the owner of property to be developed within the

meaning of the regulations as interpreted by the Commission, there was no requirement that petitioner join in the application for modification.[10]

Petitioner argues, however, that the policies and objectives underlying the PUD concept dictate that all owners within a PUD must consent to any modification. It contends that such a requirement is consistent with the cooperative purpose underlying the PUD concept, which, it points out, is created by collective agreement of the owners within the PUD, and therefore, requires mutual consent for modification. Petitioner contends that this court has held previously that all parties to a PUD must agree to all significant decisions affecting the PUD in *Dupont Circle Citizens Assoc. v. District of Columbia Zoning Comm'n,* 355 A.2d 550 (D.C.), *cert. denied,* 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976). However, *Dupont Circle* does not hold that unanimous consent of all property owners within an existing PUD is required before the Commission can make a decision affecting the PUD. This court held only that, in determining whether a proposed project meets zoning requirements, the Commission can consider any mutual agreements among owners within a PUD. *Id.* at 557. In *Dupont,* the issue was whether development rights could be transferred among owners within the PUD to meet "floor area ratio" (F.A.R.) requirements. *Id.* at 556–57. We held that since the F.A.R.'s applied to the PUD as a whole, and not to individual buildings therein, the PUD owners' agreement to transfer F.A.R.'s within the PUD could be considered by the Commission in determining whether zoning requirements had been met, and that payment for the transfer of rights within a PUD is permissible when the parties so agree. *Id.* at 557. Nothing in *Dupont* requires the

---

10. "[T]he PUD scheme is to be used as a tool of land use development which supports the objectives of the community by permitting the development of large areas as a unit." *Dupont Circle Citizens Ass'n. v. District of Columbia Zoning Comm'n,* 426 A.2d 327, 332 (D.C.1981). In recognition of this purpose, the Commission's interpretation of the regulations and consistent practice of requiring the application to be signed by only the landowners of the land to be developed, as identified on the tax rolls, does not appear to

be unreasonable. Thus, even assuming it were necessary to include the owner of all tracts of land within the PUD in an application for modification, petitioner would not be among those required to be joined in spite of its leasehold interest in the land. Its interest would have to be protected, as it was in this case, by participation in the proceeding as provided for in the regulations or by recourse against its lessor for protection of its rights under the ground lease.

Commission to withhold consideration of an application to modify a single building within a PUD where owners of other buildings within the PUD withhold consent, particularly where, as here, the proposed modification requires no alteration in petitioner's property.[11] Such a restriction would defeat an owner's right to have the Commission, which is the appropriate body for doing so, determine whether proposed modifications are consistent with the purposes of the PUD and the public interest.

Petitioner also argues that the failure to join all the owners undermines the Commission's ability to assess the impact of modifications on all owners because one owner cannot be expected to bring to the Commission's attention relevant information affecting other owners in the PUD. This argument is undermined by what occurred in this case. The agency's regulations provide for, and the petitioner had, a full opportunity to present witnesses before the Commission in support of its opposition to the intervenor's application for modification of its building. The regulatory requirements of notice, a public hearing, and party status for aggrieved parties adequately protect other owners and interested parties.

## IV.

■ We need only address briefly petitioner's other arguments. Petitioner argues that it relied on the terms of the existing PUD in developing the property 1330, and that the proposed modifications would adversely affect its interests because it developed 1330 on the assumption that 1300 would remain a single-tenant building, or that it would not be operationally modified without petitioner's consent. Petitioner does not cite any provisions of the ground lease or other evidence that the IAM building was ever, or would remain, a single-tenant building or that intervenor would be required to obtain petitioner's signature on any request for modification of its building. Petitioner acknowledges that the original PUD application and both modifications were signed by intervenor's predecessor alone.

Petitioner also expresses its concern that intervenor's present proposal may be the first in a series of unilateral changes planned by intervenor without obtaining petitioner's consent. Petitioner has not shown that its lease accords it any additional rights or protections against modifications which require consideration by, or which are appropriate for, adjudication by the Zoning Commission. See Dupont Circle, supra, 355 A.2d at 557.

Finally, petitioner argues that the Zoning Commission's order allowing modifications of the PUD without petitioner's consent violates the D.C. Administrative Procedure Act, D.C.Code §§ 1–1503, –1509, & –1510 and fundamental notions of due process. This argument is based upon its claim that the Commission violated its own regulations in allowing the application for modification to proceed without its signature. In light of our conclusion that the Commission followed its own regulations as reasonably interpreted by the agency, we reject these arguments.

---

11. Similarly, Estate of Friedman v. Pierce County, 112 Wash.2d 68, 768 P.2d 462, 469 (1989), cited by petitioner in support of its position, states merely that land use within a PUD will be made considering the entire PUD, not just a particular parcel within a PUD. Petitioner also relies for its position on Hoeber, supra, 483 F.Supp. at 1356 and Fiol v. Howard County Bd. of Appeals, 67 Md.App. 595, 508 A.2d 1005, cert. denied, 307 Md. 406, 514 A.2d 24 (1986). Nothing in these cases suggests that the Zoning Commission should be constrained to require the consent of all property owners in the PUD before a single owner can modify its building. In Hoeber, the court upheld a consent clause in urban renewal legislation, finding that the Redevelopment Land Agency had in practice interpreted the clause to require consent for modification from investors who were adversely affected both directly and indirectly. The decision rested upon the administrative interpretation of a different agency interpreting its own regulations. In Fiol, the court held that one owner's withdrawal from a mutual covenant by eight landowners granting a mutual easement for an airstrip, deprived the Board of Appeals of authority to grant a special exception to the zoning laws. The decision in Fiol was based on a zoning regulation which required all property owners involved to be petitioners where the minimum area of the 25 acres involved comprised more than one lot. 508 A.2d at 1009. The withdrawal of one owner apparently reduced the number of acres available to meet minimum requirements for the special use permit. Id. In petitioner's case, there is no showing that the proposed modifications cannot be achieved without altering mutual requirements for the separate properties within the PUD.

For the foregoing reasons, the order appealed from hereby is

*Affirmed.*