**TIBER ISLAND COOPERATIVE HOMES, INC., et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent,**

and

**Marina View Trustee, LLC, Intervenor.**

**No. 07–AA–1280.**

District of Columbia Court of Appeals.

Argued May 13, 2009.

Decided July 9, 2009.

Michael B. McGovern, Washington, DC, for petitioner.

Richard S. Love, Senior Assistant Attorney General, with whom Peter J. Nickles, Acting Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for respondent.

Deborah B. Baum, with whom Paul A. Tummonds, Jr. and Alison B. Rousseau, Washington, DC, were on the brief, for intervenor.

Before REID, FISHER, and OBERLY, Associate Judges.

OBERLY, Associate Judge:

Intervenor Marina View Trustee, LLC ("Marina View") seeks to develop real property that is located in Southwest Washington, D.C. The Zoning Commission for the District of Columbia ("the Commission") held a public hearing to consider Marina View's proposal. Petitioners Paul Greenberg and Tiber Island Cooperative Homes, Inc. ("Tiber Island" and, collectively, "Petitioners") sought to appear as parties at that hearing. The Commission denied Petitioners' request. One reason the Commission gave for the denial was that Petitioners filed the request only one day before the date on which the hearing was scheduled to take place, even though the Commission's regulations required the request to be filed at least fourteen days prior to the scheduled date. Petitioners claim that the Commission erred because the hearing did not take place on the date originally set, but was postponed by thirteen days due to a snowstorm. We conclude that the Commission did not abuse its discretion by measuring the timeliness of Petitioners' request to participate as a party by looking to the date on which the hearing was set, not the date on which the hearing was held. Therefore, we deny the petition for review.

## I. Facts and Procedural History

This case concerns Marina View's attempt to develop a parcel of real estate ("the Property") located in the District's Southwest Waterfront neighborhood. As the Commission found, the parcel at issue "is bounded by K Street, S.W. to the north; M Street, S.W. to the south; 6th Street, S.W. to the west; and the site formerly known as Waterside Mall to the east. . . . The Property consists of approximately 135,263 square feet of land and [at the time of the Commission's May 14, 2007 order was] occupied by two resi-

dential towers." The Commission observed that the towers, designed by noted architect I.M. Pei, "are an example of [Pei's] modernist design as well as the design typical in Southwest D.C. during the 1960s."

In November 2005, seeking to redevelop the Property, Marina View filed an application for consolidated review and approval of a planned unit development ("PUD") and a related amendment to the District's zoning map. In relevant part, Marina View told the Commission that it proposed to "preserve the two existing Pei Towers" and to add two new buildings, both rising to a height of 112 feet, "at the north and south ends of the Property."[1] Marina View's application was received well by, among others, the Historic Preservation Office, the Historic Preservation Review Board, the Office of Planning, the Advisory Neighborhood Commission ("ANC") for the affected region, and the District Department of Transportation.

But not everyone was thrilled. One of the critics of Marina View's application was Paul Greenberg, one of the petitioners in this case. Greenberg is a resident, shareholder, board member, and president of Tiber Island, a 389–unit housing cooperative located within 200 feet to the south of the Property.[2]

Greenberg and Tiber Island complained that the proposed PUD threatened "the vistas and light, air and view of residents of the Tiber Island Coop." Petitioners, therefore, argued for "a very different project from what [was] proposed"—specifi-

cally, Petitioners suggested that the new structures that Marina View wished to be built "be limited to 30 feet in height," about eighty feet shorter than the height ultimately approved by the Commission. As an alternative, Petitioners asked that the new buildings be set back at "a minimum [of] 22 feet from the curb." Petitioners argued that such a "setback" not only would protect their own views, but also would be "consistent with the historic character of the New Southwest, a likely historic district in the near future." According to Petitioners, the lack of a setback from the road was a flaw in the PUD application, for "[i]t makes no sense for the visual expanse of M street to *narrow* as it approaches the river; if anything, the setback of the buildings from the street should *increase* as M Street approaches the river."[3]

In order better to advance these arguments, Petitioners sought to participate as parties at a hearing on the PUD application. Party status was important to Petitioners because parties at the Commission's hearings, unlike ordinary witnesses, have the right to cross-examine witnesses. 11 DCMR § 3022.5. Yet, despite having notice of the hearing, Petitioners filed their request to participate as parties only one day before the date set for the hearing, not 14 days before that date, as 11 DCMR § 3022.3 requires.

The Commission denied Petitioners' request for party status. Chairperson Mitten offered three reasons in support of the

1. Because the merits of the architectural design are not before us and are irrelevant to our disposition of this case, we shall not describe in further detail the proposed PUD's many other features.

2. Although this is a matter of some dispute, *see infra*, because it doesn't make a difference to the resolution of this case, we assume that

Greenberg in fact had authority to speak for Tiber Island.

3. Again, because the substance of the development is not before us, there is no need to clutter the opinion with the details of Petitioners' remaining concerns with the PUD.

denial. "First of all," Mitten reasoned, "the request was untimely." Second, Mitten said that there was "no evidence that" the lawyer claiming to appear for Greenberg and Tiber Island "or Mr. Greenberg have been authorized to represent Tiber Island." Last, Mitten claimed that Petitioners' request for party status failed to "deal with the critical aspect of the test for party status[,] which is how is Tiber Island Cooperative Homes and/or Mr. Greenberg more uniquely affected than the general public?"

■ Petitioners did not contest that their request was untimely. With respect to Mitten's concern about Greenberg's authority to represent Tiber Island, Petitioners (really, their attorney) argued that Greenberg, "a member of the Bar of the District of Columbia [and] an attorney in good standing," was "also the long-time president of Tiber Island and he [could] satisfy that test ... under oath." Further, Petitioners' attorney offered, Greenberg "already [had] been sworn in that he is entitled to speak on behalf of the board and the association." Regarding Petitioners' unique interest in the PUD, Petitioners argued that the "specific light, air and view and amenities of the neighborhood that these people bought units, bought shares in the Tiber Island Cooperative are uniquely affected by this proposed project." [4]

After hearing Petitioners' arguments, Chairperson Mitten moved to deny party status "for the reasons that [she] had stat-

ed." Noting that he would have liked to have been "reassured" that Greenberg had authority to represent Tiber Island, and referring to the "timeliness issue," Commissioner Turnbull seconded Mitten's motion. Expressing "a little hesitat[ion]," Vice Chairman Hood ultimately joined Mitten and Turnbull in voting to deny Petitioners party status.

The hearing then progressed to the merits. In order to accommodate Petitioners, the Commission agreed to give Petitioners fifteen minutes to present their case, instead of the five minutes typically granted to non-party witnesses. Using this added time, Greenberg read into the record the entire testimony that he proposed to give had he been granted party status. After Greenberg had finished, the Commission gave him time to respond to questions from the Commission and from the attorney for Marina View. Ultimately, about two and one-half months after the hearing, the Commission approved the PUD application by a vote of 4–0–1, one commissioner not voting.

Petitioners then sought this court's review. As we alluded to earlier, although Petitioners plainly do not like the approved PUD, Petitioners' briefs in this court do not argue that the Zoning Commission erred in approving the PUD. Rather, Petitioners' reply brief concludes with two requests for relief. First, Petitioners ask that this court "[d]etermine that petitioners had the requisite standing to be full parties both before the Zoning

---

**4.** Petitioners also claimed that "an additional reward ... that flows from party status ... is the right to appeal." Chairperson Mitten advised Petitioners that "the Court of Appeals does not use [the Commission's] granting party status to individuals to determine whether or not they are [aggrieved] for purposes of appeal." Mitten was right. "The fact that

[someone] was not a party in the proceedings ... that led to the issuance of" an order issued by the Commission "does not bar [that party] from petitioning this court for review of that order." *York Apartments Tenants Ass'n v. District of Columbia Zoning Comm'n,* 856 A.2d 1079, 1082 n. 2 (D.C.2004).

Commission at its contested hearing, and on appeal of" the order approving the PUD "to this court." Second, Petitioners ask this court to "[r]everse" the order approving the PUD and "remand the case for further proceedings to the Zoning Commission and consolidate" the remanded case with a related proceeding "in which Marina View ... seeks modification" of the approved PUD.

## II. Discussion

### A. Standard of Review

■ Our review of the decisions of the Zoning Commission "is circumscribed. We may set aside an agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise unsupported by substantial evidence in the record." *Cathedral Park Condo. Comm. v. District of Columbia Zoning Comm'n*, 743 A.2d 1231 (D.C. 2000). "This court defers to the interpretation by the agency of its own regulations unless plainly erroneous or inconsistent with the regulations. Absent some compelling indication that the interpretation is erroneous, we are bound by the agency's construction of its own regulations.... An agency's administrative practices also are entitled to considerable weight in interpreting its statutes and regulations. When the construction of an administrative

regulation rather than a statute is in issue, deference is even more clearly in order." *1330 Connecticut Ave., Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714–15 (D.C.1995) (internal quotation marks, citations, and alterations omitted).

### B. Denial of Party Status

■ The Commission denied Petitioners' party status application because: (1) the application was untimely; (2) the application failed to demonstrate that Greenberg was authorized to represent Tiber Island; and (3) Petitioners failed to show that they were more uniquely affected by the proposed development than the general public. Because we hold that the Commission did not abuse its discretion in deeming the application untimely, we do not reach the Commission's remaining justifications.[5]

■ Petitioners do not dispute that they were obligated to file their written request for party status "not less than fourteen (14) days prior to the date set for the hearing," 11 DCMR § 3022.3. Yet, Petitioners did not submit their request for party status until February 14, 2007, only one day before the date for which the hearing was set. Nonetheless, Petitioners argue that their request was timely be-

---

**5.** Marina View argues that Petitioners lack standing to "pursue this appeal." We disagree. Under the District of Columbia Administrative Procedures Act, "[a]ny person suffering a legal wrong, or adversely affected or aggrieved by an order or decision of ... an agency in a contested case, is entitled to judicial review thereof." D.C.Code § 2–510(a) (2001). Petitioners were "aggrieved" by the denial of party status: they wished to participate as parties, but were denied that opportunity. There is no question that the denial of party status came in a "contested case." D.C.Code § 2–502(8). Therefore, Petitioners have standing to challenge the denial of party

status. *York Apartments Tenants Ass'n v. District of Columbia Zoning Comm'n*, 856 A.2d 1079 (D.C.2004), the case Marina View relies on for the contrary proposition, is inapposite because in that case, unlike here, the petitioners challenged the substance of the Commission's order, not the denial of party status. This is not to say that anyone can seek review of a Commission order on the merits simply by asking to intervene as a party. But in this case, although Petitioners do not like Marina View's proposal, their briefs in this court argue that a remand is necessary solely to allow them to vindicate their right to appear as parties.

cause on February 15, 2007, as a result of a snowstorm, the Commission continued the hearing to February 28, 2007. And because the merits hearing was held on February 28, Petitioners claim that their February 14th submission was timely. We are not persuaded.

First, technically speaking, the hearing set for February 15th *was* held on that date, albeit solely in order to continue the hearing to February 28th. Even assuming that the only hearing held was on February 28th, however, we cannot say that the Commission erred. The plain text of the regulation requires requests for party status to be filed fourteen days "prior to the date *set* for the hearing," not fourteen days prior to the date on which the hearing is held. 11 DCMR § 3022.3 (emphasis added). Although Petitioners' reading arguably is consistent with the spirit—if not the letter—of the rule, that is not enough to show that the Commission's interpretation requires reversal. *See 1330 Connecticut Ave.*, 669 A.2d at 715 ("Even assuming that the language [of a regulation applied by the Commission] is susceptible [of] another interpretation, that would not be a basis for rejection of the Commission's interpretation."). A literal reading of timing claims can result in seemingly harsh results, but that a result is harsh does not mean that it is legally wrong. *Bowles v. Russell*, 551 U.S. 205, 206–07, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (holding that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement"; thus, where a district court "purported to extend a party's time for filing an appeal beyond the period allowed by statute," court of appeals lacked jurisdiction to entertain appeal, even though party filed his "untimely notice . . . in reliance upon" the district court's order purporting to extend the filing deadline). And in any

event, Petitioners have only themselves to blame for filing their request out of time. Petitioners did not seek to excuse their untimely filing with any claim that inclement weather had been forecast in advance, or that it impeded Petitioners' attempts to get the request on file.

■ Of course, the Commission cannot apply its rules in an arbitrary or capricious way. *Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment*, 634 A.2d 1234 (D.C. 1993). We are satisfied, however, that there was nothing arbitrary about the Commission's treatment of Petitioners. The Commission gave Petitioners fifteen minutes to read their prepared remarks into the record, even though, as non-parties, Petitioners were entitled to only five minutes. The Commission also gave Petitioners an opportunity to answer questions from the Commission. Importantly, Vice Chairman Hood took Petitioners' concerns about "setbacks" seriously enough that Hood expressed an interest in "follow[ing] up" on that point "with the Office of Planning." Further, the Commission allowed the ANC representative to testify only after the representative assured Chairperson Mitten that he (the ANC representative) had a report proving that the ANC authorized him to represent it. This shows that the Commission's insistence on documentary evidence to prove one's authority to speak for others was not limited to Petitioners. This case, therefore, is unlike *Concerned Citizens of Brentwood*, where the Commission's sister body, the Board of Zoning Adjustment, first "announced a standard by which intervention would be permitted, and then, when confronted with persons meeting that standard, it abruptly decided not to permit intervention by anyone." *Concerned Citi-*

*zens of Brentwood,* 634 A.2d at 1239 (holding that across-the-board denial of intervention was arbitrary and capricious). Rather, in this case, the Commission applied the timing rule just as it had said it would. That is neither arbitrary nor capricious.[6]

### III. Conclusion

Greenberg's and Tiber Island's petition for review of the Commission's denial of their request for party status is

*Denied.*

---

6. Because we conclude that the Commission did not err in concluding that Petitioners failed timely to file their request for party status, we do not reach the question whether Petitioners otherwise had standing to appear before the Commission. We do note, though, that our case law recognizes that neighbors whose everyday views would be affected by a proposed development are precisely the sort of people who have a sufficiently concrete and particularized interest in a zoning project to have standing to challenge that project in this court. *Cathedral Park Condo. Comm. v. District of Columbia Zoning Comm'n,* 743 A.2d 1231, 1234, 1238 (D.C.2000) (holding that a condominium committee had standing to "represent[ ] unit owners in a building" in a lawsuit challenging the Zoning Commission's approval of a project across the street); *Downtown Cluster of Congregations v. District of Columbia Bd. of Zoning Adjustment,* 675 A.2d 484, 490–91 (D.C.1996) (holding that "an association of twenty-eight churches-three of which [were] within two blocks" of certain property that had been granted a use variance had standing to challenge that variance); *Dupont Circle Citizens Ass'n v. Barry,* 455 A.2d 417, 419, 422–23 (D.C.1983) (holding that a group of residents who claimed that the proposed design of a new building would "clash ... with the character of the historic district" had standing to protect the group's "asserted interest in preserving the integrity of the historical neighborhood" where the District approved a "permit to build on vacant land in a historic area of the city"). *Contra York Apartments Tenants Ass'n,* 856 A.2d 1079 (holding that association of tenants lacked standing to challenge Commission's approval of a project across the street from the tenants). Further, our precedent suggests a "more relaxed standard of standing" for those who wish to appear before an agency as opposed to before a court. *Economides v. District of Columbia Bd. of Zoning Adjustment,* 954 A.2d 427, 430, 434 (D.C.2008) (holding that resident had standing to appear before Board of Zoning Adjustment to challenge permit that allowed resident's neighbor to build a wall on his own property; the wall caused "an appreciable change in the view from the front of [resident's] house" and had a "negative effect upon the air and light available to [resident] (as well as other area residents")); *cf. Fund Democracy, LLC v. SEC,* 349 U.S.App. D.C. 347, 353, 278 F.3d 21, 27 (2002) ("Because agencies are not constrained by Article III, they may permit persons to intervene in the agency proceedings who would not have standing to seek judicial review of the agency action.").