**CAPITOL HILL RESTORATION SOCIETY, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**
**Claudia Moore, Intervenor.**

No. 13111.

District of Columbia Court of Appeals.

Argued Sept. 12, 1978.

Decided Feb. 8, 1979.

---

Ellen Seidman, Washington, D.C., with whom Richard Wolf was on the brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D.C., at the time the case was briefed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Claudia Moore, pro se.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges.

NEBEKER, Associate Judge:

Petitioner, Capitol Hill Restoration Society, Inc. (Capitol Hill) requests this court to reverse a decision of the District of Columbia Board of Zoning Adjustment (BZA or Board) granting a variance to the intervenor, Claudia Moore. The variance was requested by intervenor to permit conversion of a row house containing three apartments into one with four apartments. The variance is from the R–4 Zoning Regulations which require a minimum of 900 square feet of lot area for each dwelling unit thereon. The BZA granted the variance and Capitol Hill filed this petition. We hold that the BZA decision improperly utilized the intervenor's personal circumstances, rather than the unique circumstances of the property, as a basis for granting the variance. We therefore reverse the decision.

The property is a three-story row house located in the Capitol Hill area of the Northeast section of the District of Columbia. It is typical of the many row houses in the neighborhood. The district is zoned R–4 meaning that without a variance the most dense residential use permitted is a two-family dwelling, or a "flat." Conversion of an existing row house to a multiple dwelling of three or more units in an R–4 zoning district is permitted, where, inter alia, 900 square feet of lot area is provided for each dwelling unit. We are told that with the lot measuring 1,711 square feet the property in question could be used as a single-family dwelling or a two-family dwelling, absent a variance despite the 89 square feet deficiency.

In 1964, a prior owner of the property obtained a variance to permit conversion of the improvement from a single-family dwelling to a three-unit apartment building. The property was then sold, and the next owner renovated the three floors and made a fourth, efficiency apartment (for which no variance was granted) for himself in the small basement room. The owner lived in the basement efficiency and rented the other three floors as apartments.

Intervenor, Claudia Moore, rented one of the units as a tenant from 1967 to 1969. During that time period and presumably until 1973, all three apartments were rented to tenants by the owner who lived in the basement efficiency. In 1973, Moore purchased the property from the prior owner after having been shown a housing business license by the owner. She did not ask to see, nor was she shown, a certificate of occupancy. It is clear from the record that at the time the property was sold by the prior owner, the efficiency apartment was not permitted under the 1964 variance.

Not long after she had moved into the basement efficiency of her newly purchased property, Moore was informed by a neighbor that the row house legally could have only three units instead of four. Moore continued to live in the basement efficiency and rent the other three units until 1977 when, after verifying that the fourth unit was illegal, she applied for a Certificate of Occupancy, which was denied. By this time the prior owner had moved to Australia. Moore then moved out of the efficiency and applied to the BZA for a variance.

On November 16, 1977, a hearing was held before the BZA on the application. Moore introduced evidence to show that due

to "grandfather" rights, old variances or illegal use, many of the surrounding row houses have three or four apartment units. She also introduced a petition indicating that the neighbors of the area either approved or had no objection to the variance. In her letter to the BZA, she also stated that she had budgeted her investment in the property on the premise that she would rent three of the units and live in the fourth herself. Her counsel made the same argument at the hearing to show the hardship she faced due to the zoning requirements.

Capitol Hill, opposing intervenor's application, was of the view that there was not sufficient legal basis upon which the variance could be granted. In particular, Capitol Hill argued, *inter alia*, (1) that no unique circumstances or conditions of the property existed which would result in either practical difficulties or extraordinary hardship if the variance was not granted; and (2) that the variance requested was a considerable one since the size of the lot (1,711 sq. ft.) was less than half the size of the lot required for four units (viz 3,600 sq. ft.). The Municipal Planning Office opposed the application while the Advisory Neighborhood Commission 6B took no position on the matter.

The BZA granted the variance despite the contrary arguments:

The subject property reflects a history of a four unit occupancy since 1967 to date. There is no evidence that such occupancy created any substantial detriment to the public good. Rather the support of neighboring residents reflects the opposite. The Board in applying its discretion, concluded that the strict application of the [zoning] regulations would result in practical difficulties upon the owner

. . . . .

In its conclusion, the Board stated that the particular application "presents unique circumstances."

The applicable standard of review for BZA orders is to determine whether the decision "follows as a matter of law from the facts stated as its basis" and whether "the facts so stated have any substantial support in the evidence." If that test is met, the petition must be denied and the BZA decision affirmed. *Stewart v. D.C. Board of Zoning Adjustment,* D.C.App., 305 A.2d 516, 518 (1973).

The zoning law applicable in the present case is found in D.C.Code 1973, § 5–420, and reads as follows:

(3) Where, by reason for exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

This statute requires satisfaction of three conditions before a variance may be authorized. The first requirement is that the property, because of its size, shape, topographical conditions, "or other extraordinary or exceptional situation or condition" be unique. If unique circumstances of applicant's property are shown, the second requirement to be met is that such circumstances result in either "peculiar and exceptional practical difficulties" or in "exceptional and undue hardship upon the owner of such property", depending on whether an area variance or a use variance, respectively, is sought. *Palmer v. Board of Zoning Adjustment,* D.C.App., 287 A.2d 535, 541 (1972). Finally, if both of the previous conditions are met, a variance may issue to relieve the difficulties or hardship provided the public good would not be detrimentally

affected and the "intent, purpose and integrity of the zone plan" would not be impaired.

In *Palmer v. Board of Zoning Adjustment, supra,* this court stated the following in reference to the "unique circumstances" requirement:

> To support a variance it is fundamental that the difficulties or hardships be due to unique circumstances peculiar to the applicant's property and not to general conditions in the neighborhood. If the circumstances affect the whole area the reasonableness of the regulations [is] challenged and the proper remedy is to seek an amendment of the regulation rather than a variance. To grant a variance when the conditions are not unique would result in similar demands from neighboring property owners. Approval of such requests would in effect be amending the Zoning Regulations thereby undermining the function of the Zoning Commission whose task it is to make the basic legislative judgments in drafting regulations. [*Id.* at 539, footnotes omitted.]

Intervenor's application reveals no unique circumstances of the property supporting a variance. On the contrary the evidence establishes that the property is similar to most of the properties in the neighborhood. The row house situated on the property is one in a series of row houses which are of nearly identical design and size. The size of the lot is, in the words of the intervenor, "average for Capitol Hill." Further, no topographical aberration of the land is claimed and none is evident from the record.

Similarly, the BZA order does not address the requirement of unique circumstances of the property. The "unique circumstances" mentioned in the Board's conclusion refers to the personal misfortune of the intervenor and the history of the property rather than to the nature and size of the property.* While the use or prior use of a particular property may have some bearing on "practical difficulties" or "exceptional and undue hardship" determinations of the second statutory requirement, it is inapplicable to the first condition that the property itself be unique. Had the BZA directed its analysis to the property's peculiarities, it would have discovered, as discussed above, insufficient evidence to prove that uniqueness.

Finding that the proof in support of the application fails to meet the first of three required conditions, we conclude that the grant of the variance was erroneous in that it does not follow as a matter of law.

*Reversed.*

---

* We also note that the application would fail the second statutory test of showing "undue hardship" or "practical difficulties." In discussing the more lenient "practical difficulties" test, the court in *Palmer* declared that "a variance cannot be granted where property conforming to the regulations will produce a reasonable income, but, if put to another use, will yield a greater return." *Palmer, supra* at 542. Assuming, *arguendo,* that the "practical difficulties" test applies here, granting a variance on this application would be, in essence, allowing a conforming property producing a reasonable income to be put to another use in order to "yield a greater return." Following the *Palmer* decision, we cannot endorse such action.