# District of Columbia
# Court of Appeals

No. 15-AA-1057

FILED

NOV 10 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

AHMED AIT-GHEZALA, *et al.*,

               Petitioners,

    v.

BZA-18852

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,

               Respondent,

   and

SB-URBAN, LLC,

               Intervenor.

Petition for Review of a Decision and Order
of the District of Columbia Board of Zoning Adjustment

BEFORE:  FISHER, BECKWITH, and EASTERLY and *Associate Judges.*

## J U D G M E N T

This case came to be heard on the administrative record, a certified copy of the agency hearing transcript and the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the Board of Zoning Adjustment's ("Board") denial of petitioners' requests for party status is affirmed.  The Board's grants of special exception and variance relief are reversed, and this matter is remanded for further proceedings.

      For the Court:

      JULIO A. CASTILLO
      Clerk of the Court

Dated: November 10, 2016.

Opinion by Associate Judge John Fisher.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-1057

FILED 11/10/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

AHMED AIT-GHEZALA, *et al.*, PETITIONERS,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, RESPONDENT,

and

SB-URBAN, LLC, INTERVENOR.

Petition for Review of a Decision and Order
of the District of Columbia Board of Zoning Adjustment
(Order No. 18852/18853)

(Argued September 27, 2016                    Decided November 10, 2016)

Ahmed Ait-Ghezala, with whom Barbara Schauer was on the brief, *pro se*.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *James C. McKay, Jr.*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Phil T. Feola* argued for intervenor. *John T. Epting* and *Cary R. Kadlecek* were on the brief.

Before FISHER, BECKWITH, and EASTERLY, *Associate Judges*.

FISHER, *Associate Judge*: On September 8, 2015, the Board of Zoning

Adjustment ("the Board" or "BZA") granted intervenor SB-Urban, LLC's

application for special exception and variance relief permitting the construction of a two-parcel apartment community (the "Project") which will offer no automobile parking.[1]  A portion of one parcel (the "M Street Property") currently houses a historic garage onto which SB-Urban intends to build an addition.  The other lot (the "9th Street Property") is presently unimproved.  The Project will consist entirely of small, fully furnished studio apartments marketed to young professionals who SB-Urban maintains will require neither on-site nor on-street parking.

Petitioners Ahmed Ait-Ghezala and Barbara Schauer own property within 200 feet of the Project site.  They primarily contend that the Board (1) wrongly denied as untimely their requests for party status, (2) erred in determining that SB-Urban was entitled to the parking variance requested for the 9th Street Property, and (3) improperly granted special exception relief from parking requirements for the M Street Property.  We affirm in part, reverse in part, and remand this matter to the BZA for further consideration.

---

[1]  In its September 8, 2015, Decision and Order, the Board also granted variances from the side yard requirements in 11 DCMR § 775.1 (2016), court width requirements in § 776.3, and lot occupancy requirements in § 2604.2, and a special exception from roof structure standards under § 411.11.  Those decisions are not challenged in the petition for review.

## I.     Factual Background

SB-Urban proposes to build a two-parcel apartment community in the Blagden Alley/Naylor Court Historic District.  One parcel, located at 90 Blagden Alley (Square 368, Lot 165), is situated midblock along M Street, Northwest. A one-story garage, which has been declared a contributing building within the historic district, lies at the rear of the M Street lot.  Because the garage contributes to the historic district, it must be retained and, under District historic preservation laws, cannot be demolished absent exceptional circumstances.  The other parcel, located at 91 Blagden Alley (Square 368, Lot 164), is situated midblock along 9th Street, Northwest.  It is presently unimproved.  The parcels run perpendicular to each other and are intersected by Blagden Alley.  Both are located in the C-2-A Zone District.

SB-Urban plans to build a large addition to the garage on the M Street Property and to construct a new building on the 9th Street Property.  The two buildings will be connected by a pedestrian walkway over Blagden Alley.  They will share amenities, a lobby, and common spaces, effectively functioning as one apartment building.  The Project will include approximately 123 dwelling units, 79 of which will be in the M Street Building and 44 of which will be in the 9th

Street Building. These residential units will consist entirely of small, fully furnished studio apartments. The target demographic for the Project is young, single professionals who want to live car-free in a walkable neighborhood close to urban conveniences.

District zoning regulations require, in general, that one parking space be provided for every two dwelling units in apartment houses located in the C-2-A Zone.[2] 11 DCMR §§ 2101.1; 2118.6. In order to comply with that requirement, the Project would need to furnish 62 parking spaces, 22 for the 9th Street Property and 40 for the M Street Property. On August 15, 2014, SB-Urban filed applications[3] seeking permission to provide no parking spaces at the Project. Specifically, the applicant requested a parking variance from the requirements of § 2101.1 for the 9th Street Property and a special exception for the M Street Property pursuant to 11 DCMR § 2120.6. Section 2120.6 allows the Board to

---

[2] In September 2016 new zoning regulations took effect in the District of Columbia. 11-A DCMR § 100.3. Those regulations superseded in full the 1958 regulations and zoning maps that had been in effect, as amended, when the Board issued its Order and Decision in this matter. 11-A DCMR § 100.1. The 1958 regulations, as amended, remain in effect with respect to proceedings commenced under those regulations. 11-A DCMR § 100.4.

[3] SB-Urban initially filed its requests for variance and special exception relief as two applications—one for each subject property—but asked that the applications be heard and decided together since the parcels will be connected and will operate as one apartment community. The Board granted the request.

exempt an owner from all or some parking requirements if providing required parking would "result in significant architectural or structural difficulty in maintaining the historic integrity and appearance of [a] historic resource." *Id.* However, the Board may "grant only the amount of relief needed to alleviate the difficulty proved." *Id.*

A public hearing on the requests was scheduled for November 5, 2014. On August 21, 2014, pursuant to 11 DCMR § 3113.12, the Office of Zoning mailed notice of the hearing to, among others, the owners of property within 200 feet of the site. Notice was also published in the *District of Columbia Register* the following day. The Board subsequently continued the hearing to December 2, 2014, at the request of the applicant. Prior to that date, on November 13, 2014, the applicant posted notice on the subject properties.

The BZA held a public hearing on December 2, 2014, where it heard testimony from, among others, SB-Urban's representatives, persons in support of the application, and persons in opposition, including Petitioner Schauer. At the end of the hearing, the Board closed the record except for filings that it explicitly requested, and scheduled a continuation hearing for January 27, 2015.

On January 5, 2015, Petitioner Schauer filed a request for party status. Petitioner Ait-Ghezala requested party status on January 11, 2015. At the January 27, 2015, continuation hearing, BZA Chairperson Lloyd Jordan denied both requests as untimely. The Board, however, allowed additional public testimony both in support of and in opposition to the Project and permitted neighbors to submit additional documents into the record. Both petitioners testified at the continuation hearing.

On February 24, 2015, the Board voted 3-0-2 to grant the requested variance and special exception relief. The Board issued its written decision granting the applications on September 8, 2015. Schauer and Ait-Ghezala timely petitioned for review.

## II.    Analysis

Our review of agency action is generally limited. "This court defers to the interpretation by the agency of its own regulations unless plainly erroneous or inconsistent with the regulations." *Tiber Island Coop. Homes, Inc. v. District of Columbia Zoning Comm'n*, 975 A.2d 186, 190 (D.C. 2009) (quoting *1330 Connecticut Ave., Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714

(D.C. 1995) (internal quotation marks omitted)). Our inquiry is not, however, so deferential as to amount to no review at all. We must consider whether "findings made by the BZA are sufficiently detailed and comprehensive to permit meaningful judicial review of its decision." *Draude v. District of Columbia Bd. of Zoning Adjustment*, 582 A.2d 949, 953 (D.C. 1990). We must also determine "(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings." *Mendelson v. District of Columbia Bd. of Zoning Adjustment*, 645 A.2d 1090, 1094 (D.C. 1994) (quoting *Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 605 A.2d 22, 31 (D.C. 1992) (internal quotation marks omitted)).

## A. Denial of Party Status

Zoning regulations allow persons significantly or uniquely affected by an action requested of the Board to ask to participate as parties in certain contested

case proceedings.[4] 11 DCMR §§ 3022.3; 3022.4. Requests for party status must be filed with the Board "not less than fourteen (14) days prior to the date set for the hearing" on a matter. 11 DCMR § 3022.3.

Petitioners argue that their requests—both submitted more than fourteen days before the Board held its January 27, 2015, continuation hearing but after the November 5, 2014, date initially scheduled for the hearing and after the Board held its December 2, 2014, initial hearing on the merits of SB-Urban's requests—were timely filed.[5]

---

[4] A party has the right to, among other things, cross-examine witnesses and submit proposed findings of fact and conclusions of law. 11 DCMR §§ 3022.5; 3026.1.

[5] Petitioners offer two additional arguments. First, they contend that the hearing notification that they received failed to sufficiently explain the difference between participating in a hearing as a witness and participating as a party. They ask this court to require the Board to modify its notification letters. Being satisfied that petitioners received adequate notice, we decline this invitation. Second, petitioners argue that the Chairperson of the BZA committed procedural error by denying their party status requests without formally conferring with the rest of the Board. We disagree. Section 3117.3 (e) empowers the presiding officer at a Board hearing to "dispose of procedural requests." The Chairperson did not err in construing the petitioners' party status requests as procedural requests on which he had the authority to rule.

We cannot say that the Board erred in denying petitioners' requests as untimely.[6] Petitioners argue that the language "the date set for the hearing" is ambiguous with respect to whether a scheduled continuation hearing constitutes "the hearing" so that the time for filing a party status request starts again. However, to the extent there is ambiguity, this court must defer to an agency's reasonable interpretation of its own regulation. *See Tiber Island Coop. Homes*, 975 A.2d at 190–91; *1330 Connecticut Ave.*, 669 A.2d at 715 ("Even assuming that the language is susceptible to another interpretation, that would not be a basis for rejection of the Commission's interpretation."). Consequently, in *Tiber Island Cooperative Homes*, we concluded that the District of Columbia Zoning Commission did not err in measuring the timeliness of a request for party status by looking to the date on which a hearing was scheduled rather than the date on which the continued merits hearing was actually held. *Id.* at 190–91. Here, the Board did not unreasonably regard either the November 5 date or the December 2 date as the point from which to assess the timeliness of a request for party status.[7]

---

[6] This determination does not preclude the petitioners from again requesting party status should the Board conduct additional public hearings in accordance with the contested case provisions of the Zoning Regulations. The Board may consider any such requests under 11 DMCR § 3022.

[7] Moreover, the record does not show that the Board acted arbitrarily or capriciously in denying the petitioners' requests as untimely. The Board provided a reasoned explanation for doing so: there had already been an in-depth hearing at

(continued…)

### B.     Grant of Area Variance for 9th Street Property

The BZA is authorized to grant an area variance where it finds that "(1) there is an extraordinary or exceptional condition affecting the property; (2) practical difficulties will occur if the zoning regulations are strictly enforced; and (3) the requested 'relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan.'" *Washington Canoe Club v. District of Columbia Zoning Comm'n*, 889 A.2d 995, 1000 (D.C. 2005) (quoting *Palmer v. District of Columbia Bd. of Zoning Adjustment*, 287 A.2d 535, 538 (D.C. 1972)).

The "exceptional condition" requirement may be satisfied by a characteristic of the land, *see Fleischman v. District of Columbia Bd. of Zoning Adjustment*,

---

(…continued)
which the Board heard from persons in support of and in opposition to the Project. The Board had continued the hearing only to allow supplemental testimony regarding transportation demand studies.  Because parties may examine and cross-examine witnesses, 11 DCMR § 3006.8, the Board may have reasonably believed that granting the petitioners' requests for party status would have required it to recall the several witnesses who had already testified at the earlier hearing so that the petitioners would have an opportunity to cross-examine them.  Furthermore, the Board accommodated the petitioners by allowing both of them to testify at the January 27 continuation hearing and by permitting them to submit additional documents into the closed record.

27 A.3d 554, 561 (D.C. 2011); "[a] condition inherent in the structures built upon the land," *Capitol Hill Restoration Soc'y, Inc. v. District of Columbia Bd. of Zoning Adjustment*, 534 A.2d 939, 942 (D.C. 1987); or prior zoning actions regarding the property, *Monaco v. District of Columbia Bd. of Zoning Adjustment*, 407 A.2d 1091, 1097–98, 1100 (D.C. 1979). "The extraordinary or exceptional conditions affecting a property can arise from a confluence of factors; however, the critical requirement is that the extraordinary or exceptional condition must affect a single property." *Metropole Condo. Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 141 A.3d 1079, 1082–83 (D.C. 2016).

Here, the BZA found that the 9th Street Property was affected by an exceptional condition arising from a "confluence of factors on [the] property": (1) the property is part of a project that includes another lot; (2) only three other lots in Square 368 are larger than the 9th Street Property and "no others in the square have all of its [] identified characteristics"; and (3) the property is an irregular shape, has a narrow width, and is bounded on two sides by historic Blagden Alley.

The Board erroneously considered the first characteristic to be part of a confluence of factors contributing to the purported exceptionality of the 9th Street

Property. We have repeatedly declared—and reiterate here—that "the proposed use of a property is not a sufficient basis for determining the presence of exceptional conditions." *Metropole Condo. Ass'n*, 141 A.3d at 1083; *see also Capitol Hill Restoration Soc'y, Inc.*, 398 A.2d 13, 16 (D.C. 1979) ("[T]he use or prior use of a particular property . . . is inapplicable to the first condition that the property itself be unique."); *Palmer*, 287 A.2d at 540. As to the second finding, the Board failed to explain why the fact that the 9th Street Property is among the larger properties in its square should be understood to make it exceptional or extraordinary for the purposes of considering a variance from parking requirements. Further, the Board leaves this court to guess which of the "identified characteristics" contribute to the exceptional condition of the property and how they so contribute. Likewise, with regard to the third finding on this prong, the BZA neglected to explain why the property's location on Blagden Alley should be regarded as an exceptional condition or how this condition is unique, in any way, to the 9th Street Property rather than a shared feature of several lots in the neighborhood.

The final factors to which the Board calls attention are the property's "irregular shape" and "narrow width." We have, in the past, recognized both factors as topographical conditions that may constitute part of a confluence of

features that justify the grant of an area variance. *See, e.g.*, *Fleischman*, 27 A.3d at 561 (irregular shape); *French v. District of Columbia Bd. of Zoning Adjustment*, 658 A.2d 1023, 1035 (D.C. 1995) (irregular shape); *Washington Canoe Club*, 889 A.2d at 1002 (narrowness). But we cannot say—without additional findings regarding, among other things, whether the 9th Street Property's shape is distinctively irregular or exceptionally narrow among properties in the neighborhood—that these two features alone form a "confluence of factors" sufficient to justify the Board's conclusion that the 9th Street Property is affected by an exceptional condition.

Accordingly, we hold that the Board's conclusions do not flow rationally from its findings.[8] *See Mendelson*, 645 A.2d at 1094. We remand to the Board for additional proceedings. "On remand, the [Board] should consider all of the evidence in the record and provide this court with its findings and its rationale for concluding that there are extraordinary conditions affecting this particular property not based solely or largely on the applicant's intended use." *Metropole Condo. Ass'n*, 141 A.3d at 1084. We advise the Board that "remand is not solely for the

---

[8] Because all three prongs must be met for the Board to grant an area variance, we decline to address whether the Board erred in determining that the applicant had met its burden on the other two prongs. *Cf. Capitol Hill Restoration Soc'y, Inc.*, 398 A.2d at 16 (concluding that grant of a variance was erroneous based on applicant's failure to meet the first condition).

purpose of redrafting findings and conclusions to facilitate our review and reinforce the Board's decision. The Board may . . . conduct further hearings or . . . even reach a different result." *Washington Ethical Soc'y v. District of Columbia Bd. of Zoning Adjustment*, 421 A.2d 14, 19 (D.C. 1980) (quoting *Salsbery v. District of Columbia Bd. of Zoning Adjustment*, 318 A.2d 894, 898 (D.C. 1974) (internal quotation marks omitted)).

## C.     Grant of Special Exception for M Street Property

Under 11 DCMR § 2120.6, the Board "may grant relief from all or part of the parking requirements [for historic buildings] if the owner of the property demonstrates that, as a result of the nature or location of the historic resource, providing the required parking will result in significant architectural or structural difficulty in maintaining the historic integrity and appearance of the historic resource." The Board must, however, "grant only the amount of relief needed to alleviate the difficulty proved." 11 DCMR § 2120.6. Additionally, pursuant to 11 DCMR § 3104.1, "in the judgment of the Board, the special exceptions [must] be in harmony with the general purpose and intent of the Zoning Regulations and Zoning Maps and [must] not tend to affect adversely, the use of neighboring property in accordance with the Zoning Regulations and Zoning Maps."

Here, the Board determined that SB-Urban had met its burden of demonstrating that, as a result of the nature or location of the historic resource, providing the required parking would result in significant architectural or structural difficulty in maintaining the historic integrity and appearance of the historic resource. It granted SB-Urban's application for a complete special exception to the parking requirements.

In so doing, however, the Board neglected to even acknowledge in its Decision and Order that, by regulation, it must "grant only the amount of relief needed to alleviate the difficulty proved." 11 DCMR § 2120.6. The record presents no evidence that the Board considered granting anything less than the full relief requested. It thus is not clear to this court that the Board granted no more relief than "needed to alleviate the difficulty proved." We cannot allow an agency to disregard the plain language of a governing regulation. We hold that the Board's findings are not "sufficiently detailed and comprehensive to permit meaningful judicial review of its decision." *Draude*, 582 A.2d at 953.

We remind the Board that it has a "duty to explain fully the reasons underlying its understanding of the factors shaping its ultimate conclusion."

*A.L.W., Inc. v. District of Columbia Bd. of Zoning Adjustment*, 338 A.2d 428, 432 (D.C. 1975). We remand so that the Board may receive new evidence, if it so chooses; may amend its findings; and may clarify whether it, in fact, granted no more relief than necessary.[9]

### III. Conclusion

The Board's denial of the petitioners' requests for party status is affirmed. The Board's grants of special exception and variance relief are reversed and this matter is remanded for further proceedings.

*It is so ordered.*

---

[9] Petitioners also argue that even though, by statute, the Board is required to give great weight to the recommendations of the Office of Planning ("OP"), *see* D.C. Code § 6-623.04, OP's report and testimony in this matter were flawed and failed to demonstrate rigorous assessment of SB-Urban's application and, as a result, should be denied such consideration. We disagree. Any inaccuracies were not so serious as to preclude BZA from accepting OP's recommendations.