*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-932

FILED **04/12/201**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

DUPONT CIRCLE CITIZENS ASSOCIATION, *ET AL.*,
PETITIONERS,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,
RESPONDENT,

and

ST. THOMAS' EPISCOPAL PARISH, *ET AL.*, INTERVENORS.

Petition for Review of a Decision and Order
of the District of Columbia Board of Zoning Adjustment
(BZA-19133)

(Argued June 27, 2017                    Decided April 12, 2018)

*Douglas C. Melcher* for petitioners.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, and *Richard S. Love*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

*Phil T. Feola*, with whom *Allison C. Prince* and *Cary R. Kadlecek* were on the brief, for intervenors.

Before FISHER and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

BECKWITH, *Associate Judge*: St. Thomas' Episcopal Parish, a church in Dupont Circle, sought an area variance in order to build a combination church and residential building, and the Board of Zoning Adjustment granted that variance. Two neighborhood associations—collectively, the petitioners here—challenge the Board's order, arguing that the Parish has not met the requirements for an area variance. We vacate the Board's order and remand for further proceedings.

## I.

On September 1, 2015, the Parish submitted an application to the Board of Zoning Adjustment requesting an area variance in order to construct a building exceeding the lot occupancy requirement. The site is located in a Special Purpose District where the zoning regulations at the time provided that a building devoted to residential use could not occupy more than 80% of the lot. 11 DCMR § 532.1 (2015).[1]

The Parish has occupied its current site on Church Street, N.W., where it intends to build the proposed project, for more than 120 years. In 1970, the main church building was destroyed by fire. Since then the church has operated out of

---

[1] In September 2016, a new set of zoning regulations took effect in the District of Columbia. *See Ait-Ghezala v. District of Columbia Bd. of Zoning Adjustment*, 148 A.3d 1211, 1214 n.2 (D.C. 2016). The previous regulations continue to govern proceedings commenced prior to that date. *Id.*

the only remaining structure on the property, the Parish Hall, while maintaining a private park open to the public where the main church once stood. The project the Parish proposes to build is an addition to the Parish Hall which, though one building for zoning purposes, would comprise two distinct elements: a new church and a multifamily residential building. The four-story church element, located on the western side of the property, would include a sanctuary, classrooms, meeting space, and a large lobby that would also function as a "ruins gallery" displaying the remains of the original church. The residential element, located on the eastern side of the property, would incorporate the Parish Hall and contain approximately fifty-six units in seven stories. An underground parking garage would serve the whole property.

The project as proposed would comply with all applicable zoning regulations except that the first four floors would exceed the maximum lot occupancy of 80%. The first floor of the entire project would occupy 86.7% of the lot, although required setbacks would decrease lot occupancy on the higher floors. Because the Parish Hall is a contributing building to the Dupont Circle Historic District, it cannot be altered without permission from the Mayor or her agent. The project would remove a small part of the rear of the Parish Hall—an undertaking the Historic Preservation Review Board has approved. The remaining portion of the Parish Hall already occupies 19.2% of the lot.

The Board held an evidentiary hearing at which the petitioners, who had been granted party status, participated. After announcing its decision to grant the variance, the Board issued a written decision concluding that "the contributing nature of the Parish Hall" was an exceptional condition that would create a practical difficulty in complying with the existing lot occupancy regulations. The Board further concluded that this practical difficulty warranted variance relief, and that the requested relief would not be substantially detrimental to the public good or the integrity of the zone plan.[2]

The petitioners timely petitioned for review of the grant of the area variance, and the Parish and its developer, J. River Church Street, intervened to defend the Board's decision.[3]

## II.

The Board of Zoning Adjustment may grant an area variance if it finds that

---

[2] The Board is required to give "great weight" to the recommendations of both the Office of Planning (OP) and the Advisory Neighborhood Commission (ANC) in the affected area. D.C. Code §§ 6-623.04, 1-309.10 (d). The OP supported the Parish's application, while the ANC opposed it. The Board's decision explained its reasons for disagreeing with the ANC, and the parties have not challenged the grant of the area variance on this ground.

[3] The developer was not a party to the proceedings below and therefore cannot intervene as of right, *see* D.C. Ct. App. R. 15 (d), but the petitioners do not object to the developer's joint participation with the Parish.

"(1) there is an extraordinary or exceptional condition affecting the property; (2) practical difficulties will occur if the zoning regulations are strictly enforced; and (3) the requested relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan." *Ait-Ghezala v. District of Columbia Bd. of Zoning Adjustment*, 148 A.3d 1211, 1216 (D.C. 2016) (quoting *Washington Canoe Club v. District of Columbia Zoning Comm'n*, 889 A.2d 995, 1000 (D.C. 2005)) (internal quotation marks omitted). The Board found all three of these prerequisites satisfied, and the petitioners challenge all three findings.

In reviewing the Board's decision, we must consider whether its findings "are sufficiently detailed and comprehensive to permit meaningful judicial review of its decision." *Draude v. District of Columbia Bd. of Zoning Adjustment*, 582 A.2d 949, 953 (D.C. 1990) (*Draude II*). "We must also determine '(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings.'" *Ait-Ghezala*, 148 A.3d at 1215 (quoting *Mendelson v. District of Columbia Bd. of Zoning Adjustment*, 645 A.2d 1090, 1094 (D.C. 1994)).

"The extraordinary or exceptional conditions affecting a property can arise from a confluence of factors; however, the critical requirement is that the

extraordinary or exceptional condition must affect a single property." *Metropole Condo. Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 141 A.3d 1079, 1082–83 (D.C. 2016). The requirement may be satisfied by, *inter alia*, features of the lot such as irregular shape or narrow width, "a characteristic of the land, [a] condition inherent in the structures built upon the land, or prior zoning actions regarding the property." *Ait-Ghezala*, 148 A.3d at 1217 (citations and internal quotation marks omitted).

The Board found an exceptional condition based primarily on the presence of the Parish Hall, a contributing building to the historic district, and secondarily on the Parish's 120-year history at the location and its need for "new and expanded facilities to accomplish its mission." We address these two factors separately.

The Board determined that "the contributing nature of the Parish Hall would in and of itself represent an exceptional condition." It based this conclusion on our opinion in *United Unions, Inc. v. District of Columbia Board of Zoning Adjustment*, 554 A.2d 313, 317 (D.C. 1989), in which we affirmed the Board's finding that the presence of a historic landmark building which restricted development opportunities was an exceptional condition. The Board acknowledged that *United Unions* concerned a building that had itself been designated a historic landmark, not merely a building that contributed to a historic district. It viewed the analogy as appropriate, however, because the Parish Hall,

like the landmark building in *United Unions*, "possesses contributing features that also reflect an exceptional design that constrains the extent to which it may be altered and an addition added."

The presence of a contributing structure is not sufficient to constitute an exceptional condition. While "the landmark status of a single building is legally predicated on the unique attributes of that building," *id.*, many buildings within a historic district may be contributing structures. Indeed, a comparison of the facts of *United Unions* and this case illustrates why an exceptional condition existed there and not here: the landmark building at issue in *United Unions* was the Corcoran Gallery of Art, "one of Washington's principal architectural landmarks," *id.* at 314, while the overwhelming majority of lots in the Dupont Circle Historic District contain a contributing structure like the Parish Hall. The presence of a contributing structure is thus less akin to the presence of a landmark building than to the property's inclusion in a historic district, which does not qualify as an exceptional circumstance. *Capitol Hill Restoration Soc'y v. District of Columbia Bd. of Zoning Adjustment*, 534 A.2d 939 (D.C. 1987); *see also Palmer v. District of Columbia Bd. of Zoning Adjustment*, 287 A.2d 535, 539 (D.C. 1972) ("If the circumstances affect the whole area the reasonableness of the regulations are challenged and the proper remedy is to seek an amendment of the regulation rather than a variance.").

The Parish acknowledges that the Board's view of the equivalence of contributing structure and exceptional condition was "overly simplistic," but it defends the Board's finding of exceptional condition on another ground. The Parish argues that, when a nonprofit or public service organization is the applicant, we have applied a more flexible standard in finding exceptional conditions and recognized the applicant's need for a particular site as an exceptional condition regarding that site. As this standard is not codified in the statute governing variances, *see* D.C. Code § 6-641.07 (g)(3) (2012 Repl.), or the implementing regulation, *see* 11 DCMR § 3103 (2015), we look to the cases defining and applying the doctrine.

The first case in which we explicitly recognized the relevance of a variance petitioner's status as a public service organization was *Monaco v. District of Columbia Board of Zoning Adjustment*, 407 A.2d 1091 (D.C. 1979), where we affirmed the grant of a variance allowing the Republican National Committee to build another office building next to its existing office building on Capitol Hill. We recognized that the site's location near the Capitol and the existing building did not "make the site unique" but did make it "uniquely suitable" for the RNC's needs. *Id.* at 1098. Distinguishing "a commercial user," who "might not be able to establish uniqueness in a particular site's exceptional profit-making potential," we held that "the BZA may be more flexible when it assesses a non-profit organization

which is a well established element of our governmental system." *Id.* Restating this rule of additional flexibility, we held that "when a public service has inadequate facilities and applies for a variance to expand into an adjacent area in common ownership which has long been regarded as part of the same site, then the Board of Zoning Adjustment does not err in considering the needs of the organization" as part of the exceptional condition prong. *Id.* at 1099.

We refined this doctrine in *Draude v. District of Columbia Board of Zoning Adjustment*, 527 A.2d 1242 (D.C. 1987) (*Draude I*), where we remanded for further proceedings after holding that the Board erred in granting an area variance to the George Washington University Hospital to construct an addition to an existing medical building. *Id.* at 1255–57. Interpreting *Monaco*, we held that "[w]here a public service organization applies for an area variance . . . it must show (1) that the specific design it wants to build constitutes an institutional necessity, not merely the most desired of various options, and (2) precisely how the needed design features require the specific variance sought." *Id.* at 1256.[4] We have referred to the public service organization doctrine only occasionally since *Draude I*, without further refinements. *See Williams v. District of Columbia Bd. of*

---

[4] In *Draude II*, we held that the hospital had met this standard and that "the existence and purpose" of the neighboring medical building was a permissible factor in finding an exceptional condition. 582 A.2d at 956.

*Zoning Adjustment*, 535 A.2d 910, 911 n.2 (D.C. 1988); *Draude II*, 582 A.2d at 956.

The petitioners, although not disputing that the public service organization doctrine exists, argue that the Parish does not qualify because it is merely "a private organization dedicated to particular religious beliefs and practices." We have approved the application of the doctrine to the RNC in *Monaco*, to a hospital in *Draude I* and *Draude II*, and to a nonprofit social service center in *National Black Child Development Institute, Inc. v. District of Columbia Board of Zoning Adjustment*, 483 A.2d 687 (D.C. 1984). Although none of these cases explicitly answers the question whether a church is a "public service organization" within the meaning of the doctrine, we have undoubtedly extended the scope of that term beyond how we initially defined it in *Monaco*—as "a non-profit organization which is a well established element of our governmental system." 407 A.2d at 1098. In both *National Black Child Development Institute*, 483 A.2d at 690, and *Foxhall Community Citizens Association v. District of Columbia Board of Zoning Adjustment*, 524 A.2d 759, 764 n.6 (D.C. 1987), we equated "public service" with "nonprofit entity." And in *Foxhall*, we also noted that the *Monaco* doctrine did not apply because the church that sought the variance "did not seek the variance to alter its own use of the property [but rather] in order to sell the church to a contract purchaser who would not buy it unless the way was clear for him to use it for

another purpose." 524 A.2d at 764 n.6. The suggestion is that, if a church did seek a variance for its own ends, it would receive the greater flexibility reserved for public service organizations in the variance analysis. Under these circumstances, it requires no extension of the *Monaco* doctrine to hold that a church may be a public service organization entitled to additional flexibility in the Board's variance analysis.

In this case, however, the Board did not explicitly find that the Parish was a public service organization or that it had made the showings required by *Draude I* in order to receive the additional flexibility owed to such organizations. The bare and unexplained sentence in the Board's decision stating that "the church has a 120-year history at the present location and requires new and expanded facilities to accomplish its mission" is not sufficient to show "(1) that the specific design it wants to build constitutes an institutional necessity, not merely the most desired of various options, and (2) precisely how the needed design features require the specific variance sought." *Draude I*, 527 A.2d at 1256.[5] When addressing these

---

[5] The Parish's brief on appeal asserts, with no support in the Board's findings of fact, that "the Parish Hall is no longer an adequate facility" because "[i]t has become too small for the church's needs and would require a significant and costly modernization and expansion for any continued use," that the Parish needs "a new and larger facility for it to continue its services," and that it does not have the money to rebuild in the expensive Dupont Circle neighborhood without adding the residential development. These alleged facts, if found by the Board and supported by the record, would go some distance toward satisfying the

(continued…)

questions, the Board should consider that the variance seems to have been requested because of the applicant's desire to erect both a church and a residential building on this lot, which formerly was occupied only by the church.

## III.

Concluding that the Parish cannot demonstrate an exceptional condition affecting its property through the mere presence of a structure that contributes to a historic district, we vacate the Board's decision and remand for consideration of whether the Parish is entitled to additional flexibility as a public service organization and whether the requested variance may be justified under that doctrine.

*So ordered.*

---

(…continued)
requirements laid out in *Draude I*.