*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-445

MELINDA ROTH, et al., PETITIONERS,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, RESPONDENT,

and

3428 O STREET LLC and CALL YOUR MOTHER DELI, INTERVENORS.

Petition for Review of an Order of the
District of Columbia Board of Zoning Adjustment
(BZA-20135)

(Argued November 16, 2021                    Decided August 11, 2022)

*Melinda Roth* and *Kimberly Panozzo*, pro se petitioners, with whom *Emma Almond* et al., pro se petitioners, were on the brief.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the statement was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, filed a statement in lieu of brief.

*Cynthia A. Gierhart*, with whom *Philip T. Evans* was on the brief, for intervenors.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*:  Intervenor 3428 O Street, LLC, owns a property in Georgetown.  Intervenor Call Your Mother Deli (CYM) signed a ten-year lease on the property, intending to operate there as a bagel store.  The owner applied to the District of Columbia Board of Zoning Adjustment (BZA) for a variance from the otherwise applicable zoning regulations.  Petitioners are a group of nearby residents who opposed the application and who seek review of the BZA's order granting the variance.  Although we uphold most of the BZA's conclusions, we vacate and remand for further proceedings to address two issues that we conclude were not adequately addressed by the BZA.

## I.

The property at issue is on a corner lot.  The property is zoned R-20.  The surrounding area is predominantly residential and also is zoned R-20, with the exception of a small area 550 feet from the property that is zoned for mixed use (MU-3A).  A previously issued variance permits retail use of the property.  Intervenors seek a further variance so that CYM can prepare bagels and bagel sandwiches on site.

The owner initially sought a use variance that would permit the use of the property as a prepared food shop. *See generally Neighbors for Responsive Gov't, LLC v. D.C. Bd. of Zoning Adjustment*, 195 A.3d 35, 55 (D.C. 2018) (use variance "seeks permission for a use that is not permitted in the zone district where the property is located"). Petitioner Melinda Roth sought to participate in the proceeding as a party, but the BZA denied her request. After two hearings, the owner amended its request, seeking instead an area variance. *See generally id.* (area variance "is a request to deviate from an area requirement applicable to the zone district in which the property is located") (internal quotation marks omitted). The owner asserted that the proposed use would be permissible as a matter of right as a corner store, except for one specific requirement: that corner stores in R-20 zones be at least 750 feet from any MU zone (the 750-foot rule). 11-U D.C.M.R. §§ 254, 254.6(g).

The BZA held two further hearings on the amended application and accepted numerous written comments. Ms. Roth was permitted to participate as a party at the two further hearings. The BZA granted the area variance requested in the amended application.

**II.**

Petitioner Roth argues that the BZA erred by initially denying her party status and then belatedly granting her that status. We see no basis for reversal on that ground.

Somewhat counterintuitively, Ms. Roth argues that the BZA lacked authority to reconsider its initial denial of party status to her. We conclude that Ms. Roth has not preserved that argument for review. After the BZA denied Ms. Roth's request for party status, Ms. Roth objected. The BZA then reversed its earlier decision and granted Ms. Roth party status. The Chair of the BZA specifically advised Ms. Roth that he "want[ed] to make sure that [she had] an opportunity to be heard and there[ are] no issues with that." Ms. Roth understandably did not object to being granted the party status she had requested, instead referring to the BZA's decision as "a good surprise." Ms. Roth thereafter participated in the proceedings before the BZA as a party, both at two hearings and by filing a post-hearing written submission. We decline to consider her argument in this court that the BZA erred by permitting her to do so. *Cf., e.g.*, *President & Dirs. of Georgetown Coll. v. D.C. Bd. of Zoning Adjustment*, 837 A.2d 58, 72 (D.C. 2003) (declining to consider challenge to action that petitioners urged BZA to take).

Ms. Roth also argues that she was prejudiced by the BZA's initial denial of her request for party status. First, she contends that she was unable to participate fully in the first two hearings, because she was not a party at the time of those hearings. That argument too is not properly before this court. When the BZA belatedly granted her party status, Ms. Roth did not request an opportunity to reopen the record or have witnesses recalled. She did at one point briefly mention that she had not been able to participate fully in the first two hearings, but she identified no specific prejudice and requested no relief from the BZA on that basis. Even in this court, Ms. Roth has not been at all specific about what information she might have hoped to elicit if she had been given party status at the first two hearings. We therefore see no extraordinary circumstances warranting a departure from our ordinary rule that we "will not entertain contentions not raised before the BZA." *George Washington Univ. v. D.C. Bd. of Zoning Adjustment*, 831 A.2d 921, 937 (D.C. 2003) (brackets omitted); *see also, e.g.*, *id.* at 938 ("Points not asserted with sufficient precision [before the agency] will normally be spurned on [review].") (brackets and ellipses omitted).

Second, Ms. Roth suggests in passing that the belated grant of party status left her unprepared to participate in the last two hearings. Ms. Roth does not, however, provide any factual specifics or legal argument in support of that passing suggestion.

We therefore do not address the issue.  *See, e.g.*, *Miller v. United States*, 209 A.3d 75, 80 (D.C. 2019) (declining to address issue not adequately briefed on appeal).

**III.**

Petitioners argue that the BZA erred by granting the requested area variance. We review the BZA's decision deferentially.  *E.g.*, *Wolf v. D.C. Bd. of Zoning Adjustment*, 397 A.2d 936, 942 (D.C. 1979).  "In reviewing a BZA decision, we must determine (1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings."  *Ward 5 Improvement Ass'n v. D.C. Bd. of Zoning Adjustment*, 98 A.3d 147, 152 (D.C. 2014) (internal quotation marks omitted).  "We defer to the BZA's interpretation of the zoning regulations unless its interpretation is plainly wrong or inconsistent with the governing statute."  *Id.* (internal quotation marks omitted).  "The function of the court in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues, and we can only perform this function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision."  *Id.* (brackets and internal quotation marks omitted).

The owner in this case ultimately requested an area variance. To obtain an area variance, "an applicant must show that (1) there is an extraordinary or exceptional condition affecting the property; (2) practical difficulties will occur if the zoning regulations are strictly enforced; and (3) the requested relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan." *Fleischman v. D.C. Bd. of Zoning Adjustment*, 27 A.3d 554, 560 (D.C. 2011) (ellipses omitted). The BZA found that all three requirements had been met. We uphold the BZA's ruling in part and remand in part for further consideration.

## A. Extraordinary or Exceptional Conditions

"The extraordinary or exceptional conditions affecting a property can arise from a confluence of factors; however, the critical requirement is that the extraordinary or exceptional condition must affect a single property." *Dupont Circle Citizens Ass'n v. D.C. Bd. of Zoning Adjustment*, 182 A.3d 138, 141 (D.C. 2018) (internal quotation marks omitted). "The requirement may be satisfied by, *inter alia*, features of the lot such as irregular shape or narrow width, a characteristic of the land, a condition inherent in the structures built upon the land, or prior zoning actions regarding the property." *Id.* (brackets and internal quotation marks omitted).

The BZA listed a number of circumstances that, taken together, amounted in the BZA's view to an exceptional condition affecting the property: the property is a corner lot; the property is smaller than most lots in the surrounding area; the building on the property was constructed to be a corner store; the building is one of only three corner commercial properties in a largely residential area; the nearby area zoned MU-3 (which created the need for the requested area variance) is small and an exception to the zoning in most of the surrounding area; and the property was already in commercial use at the time the nearby property was zoned MU-3. We view the BZA's conclusion on this point to be reasonable.

We are not persuaded by petitioners' arguments to the contrary. First, petitioners focus on the various listed circumstances one at a time, arguing that each such circumstance does not make the property unique, because other properties in the area share that particular circumstance. As we have already noted, however, an exceptional condition can arise from a "confluence of factors." *Dupont Circle Citizens Ass'n*, 182 A.3d at 141 (internal quotation marks omitted). There is no requirement that each such factor by itself make the property unique. Moreover, petitioners have not identified any other property affected by the same set of factors the BZA relied upon in this case.

Second, petitioners argue that the long-standing prior use of the property for commercial purposes is not relevant to whether the property is affected by an exceptional condition. In support of that argument, petitioners rely on *Capitol Hill Restoration Soc'y, Inc. v. D.C. Bd. of Zoning Adjustment*, 398 A.2d 13 (D.C. 1979). It is true that the court in that case stated that the "prior use of a particular property . . . is inapplicable" to the exceptional-condition inquiry. *Id.* at 16. As the BZA accurately explained, however, *Capitol Hill Restoration Society* involved an illegal prior use of the property. 398 A.2d at 14-15; *see also Monaco v. D.C. Bd. of Zoning Adjustment*, 407 A.2d 1091, 1097 (D.C. 1979) ("[T]he history we referred to in *Capitol Hill Restoration Soc'y* . . . was merely the previous illegal use of the property by the owner, whereas the history material to this case consists of past actions of the zoning authorities.") (italics added). The court clarified in *Monaco* that prior lawful uses of the property pursuant to zoning approvals are relevant to the exceptional-condition inquiry. 407 A.2d at 1097; *see also, e.g.*, *Dupont Circle Citizens Ass'n*, 182 A.3d at 141 ("prior zoning actions regarding the property" can contribute to finding of exceptional condition supporting area variance) (internal quotation marks omitted).

## B. Practical Difficulties to Owner

The second requirement is that the owner show that "strict application of a zoning regulation would result in peculiar and exceptional practical difficulties to the owner of the property." 11-X D.C.M.R. § 1002.1(a). "In determining whether this requirement is met, it is proper for the BZA to consider a wide range of factors, including (but not limited to) economic use of property and increased expense and inconvenience to the applicant." *Neighbors for Responsive Gov't, LLC v. D.C. Bd. of Zoning Adjustment*, 195 A.3d 35, 56 (D.C. 2018) (internal quotation marks omitted).

The BZA's reasoning on this issue can be summarized as follows: denial of the requested area variance would prevent use of the property as a corner store; traditional retail establishments were struggling in the area; businesses serving food were more likely to have long-term success; the design of the building limited the viable uses of the property to service of food or a flower shop; the owner thus would have difficulty attracting a viable alternative tenant; and enforcing the 750-foot rule would be unnecessarily burdensome, because that rule was intended to protect nearby commercial areas, which would not be adversely affected by granting the area variance.

Petitioners dispute the BZA's reasoning in numerous respects. We are unpersuaded by most of petitioners' arguments. To the extent that petitioners point to conflicting evidence and challenge the adequacy of the evidence on various issues, their arguments cannot prevail in light of our deferential standard of review. *See, e.g.*, *Neighbors for Responsive Gov't*, 195 A.3d at 47 ("[W]e will not reweigh the evidence; if there is substantial evidence to support the [BZA]'s finding, then the mere existence of substantial evidence contrary to that finding does not allow this court to substitute its judgment for that of the [BZA].") (brackets and internal quotation marks omitted).

We are given pause, however, by one of petitioners' arguments on this issue. As petitioners note, CYM's ten-year lease of the property was not conditioned on obtaining a variance. The "practical difficulties" inquiry is focused on difficulties "to the owner of the property," not the tenant. 11-X D.C.M.R. § 1002.1(a). Given the ten-year lease, it is not immediately clear whether or how denying the requested area variance would result in practical difficulties to the owner. Of course, difficulties for a tenant could potentially cause difficulties for an owner. For example, there was some evidence suggesting that although CYM could operate on the property without a variance, denial of the requested variance might affect CYM's profitability, which might in turn affect CYM's ability to make payments under the

lease or might lead CYM to break the lease and pay damages. That evidence was far from conclusive, however. For example, CYM apparently operates at a number of locations and thus could possibly make payments under the lease even if its activities at a single location were not profitable. In any event, the BZA did not explicitly address the implications of the ten-year lease for the question whether denial of the requested variance would result in practical difficulties to the owner. We therefore remand the case to the BZA, for the BZA to adequately address that question. *See, e.g.*, *Ait-Ghezala v. D.C. Bd. of Zoning Adjustment*, 148 A.3d 1211, 1218 (D.C. 2016) (remanding for BZA "to explain fully the reasons underlying its understanding of the factors shaping its ultimate conclusion") (internal quotation mark omitted).

## C. Substantial Detriment to Public Good or Impairment of Zoning Plan

The BZA found that approving the requested variance would not cause substantial detriment to the public good. In sum, the BZA reasoned that the property had historically been used for commercial purposes; corner-store uses were permitted in the area as a matter of right; the regulations governing corner stores limited the use to which the property could be put; the BZA's order approving the area variance imposed conditions, such as limitation of hours of operation, that

would mitigate adverse impacts on the surrounding neighborhood; the 750-foot rule was intended to protect the commercial corridors of Georgetown, not isolated pockets of mixed-use property; it was always contemplated that exceptions to the 750-foot rule might be warranted; and, based on the testimony of witnesses, granting the requested variance would not unduly affect existing businesses.

Petitioners challenge the BZA's conclusion in numerous respects. A number of those challenges fail in light of our deferential standard of review, because they dispute the BZA's resolution of conflicting evidence where, in our view, the BZA's conclusions are supported by substantial evidence. We are not persuaded by petitioners' other arguments on this issue. First, petitioners rely on evidence, which they presented to the BZA in connection with a motion for rehearing, about the actual impact of CYM's operations on the neighborhood. The BZA's ruling on that motion, however, is not part of the record in this court. We are advised that the BZA denied the motion, but petitioners apparently did not seek review of that ruling. Given those circumstances, we conclude that the information brought to the attention of the BZA in connection with the motion for rehearing is not properly before this court. *Cf., e.g.*, *Smith v. United States*, 686 A.2d 537, 550 (D.C. 1996) (where no proper appeal taken from denial of motion to reconsider, appeal decided on basis of

trial record rather than on basis of information presented in connection with motion to reconsider).

Second, petitioners rely on several decisions of the BZA from the 1970s declining to grant variances to permit delicatessens to operate on the block where the property at issue in this case is located. We conclude, however, that the BZA reasonably declined to give weight to those decisions, which were from decades earlier, applied a different legal standard than the "area variance" standard applicable in the present case, and necessarily rested on factual records different from the record in this case. *See, e.g.*, *Sullivan*, No. 10588 (D.C. Zoning Adm'r. Jan. 19, 1971) (denying application for use variance).

Finally, petitioners argue that granting the area variance in this case impaired the zoning plan because it "created a slippery slope" that will lead to other variances. We conclude that the BZA adequately addressed this concern, explaining that variance rulings turn on the facts of each specific case and that the property in this case was affected by a combination of circumstances "not applicable to many other properties in the area."

**IV.**

Petitioners argue that the requested variance, even if granted, would not suffice to make it lawful for CYM to prepare bagels and bagel sandwiches on site. We remand for further consideration of one aspect of this argument.

**A. Fast Food Establishment**

In their opening brief, petitioners argue that CYM's planned operations would make CYM a "fast food establishment," which is flatly prohibited in residential zones. In response, intervenors (1) pointed out that petitioners had relied on a zoning regulation that was no longer in effect, and (2) argued that CYM was not a fast-food establishment under the actually applicable regulations. Petitioners chose not to address that issue in their reply brief or at oral argument. We therefore decline to address the issue. *See Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1091 n.7 (D.C. 1988) (declining to further address issue that appellants "apparently abandoned" in reply brief and did not "attempt to resurrect" at oral argument).

## B. Need for Additional Variances

Petitioners argue that CYM would not meet numerous other requirements of the corner-store regulation and therefore would require other variances in order to operate as CYM proposes. The BZA declined to address that argument on the merits. Rather, the BZA relied on the principle that if an applicant seeks a specific variance, the BZA can determine whether or not to grant that variance without deciding at that point whether the variance would suffice to permit the intended use. If an issue arises about whether the obtained variance is sufficient, that issue can be decided by the Zoning Administrator at the time a building permit is requested. This court has previously approved that approach. *Sheridan Kalorama Hist. Ass'n v. D.C. Bd. of Zoning Adjustment*, 229 A.3d 1246, 1268-69 & n.126 (D.C. 2020). We therefore have no occasion at this point to address petitioners' argument that the approved area variance is not adequate to permit CYM's proposed use.

## C. Need for Special Exception

Petitioners also argue that CYM's proposed use could be approved only if CYM obtained a special exception. *See Neighbors for Responsive Gov't*, 195 A.3d at 47 ("The BZA is empowered by law to grant requests for 'special exceptions'

allowing uses or construction not permitted as of right in a given zone.") (quoting D.C. Code § 6-641.07). Arguably, the BZA could have declined to rule on that issue and could instead have simply granted the requested area variance and left to the Zoning Administrator whether that variance was sufficient to permit CYM's proposed use. The BZA did not take that approach, however. Rather, the BZA decided that CYM did not require a special exception. We remand for the Board to further address that issue.

Petitioners' argument turns on the interpretation of the corner-store regulation, 11-U D.C.M.R. § 254. Under the corner-store regulation, "[a] corner store for which the use is a fresh food market or grocery store devoted primarily to the retail sale of food shall be permitted as a matter of right," provided that the corner store meets several conditions. *Id.* at § 254.13. It is undisputed that CYM will not operate as "a fresh food market or grocery store devoted primarily to the retail sale of food." *Id.* It also is undisputed that CYM could not meet all of the conditions under § 254.13, because CYM needed an area variance from the 750-foot rule. *Id.* at § 254.13(a), 254.6(g).

The corner-store regulation provides that "[a] corner store use that is not permitted as a matter of right pursuant to Subtitle U § 254.13[] shall be permitted as

a special exception," subject to certain conditions. 11-U D.C.M.R. § 254.14. Relying on that provision, petitioners argue that CYM needed a special exception in order to operate as proposed. Intervenors dispute that argument, making two principal points. First, intervenors argue that § 254.14 applies only to fresh-food markets or grocery stores. Second, intervenors rely on 11-U D.C.M.R. § 254.16, which states that "[e]xcept as provided in Subtitle U §§ 254.13 and 254.14, an application not meeting the requirements of this section shall be deemed a variance." Intervenors therefore contend that they permissibly proceeded by seeking an area variance under § 254.16 rather than a special exception under § 254.14.

The BZA's explanation for its ruling on this issue is as follows: "The Board concurs with the Application's interpretation of the Zoning Regulations that the special exception use referenced in Subtitle U § 254.14 applies only to corner store uses that are fresh [food] markets or grocery stores which do not meet[] the additional requirements of Subtitle U § 254.13." We do not view that as a sufficient explanation of the BZA's ruling.

Considered in isolation, the language of § 254.14 does not seem limited solely to fresh food markets or grocery stores. Rather, § 254.14 appears by its terms to apply to any corner store that does not meet the requirements of § 254.13. On that

view, the corner-store regulation arguably operates as follows:  a corner store that is a fresh-food market or grocery store can operate as a matter of right if it can meet certain conditions, § 254.13; a corner store otherwise can be given approval to operate under a special exception if it can meet certain conditions, § 254.14; and, if necessary, a corner store that cannot meet the requirements of § 254.13 or § 254.14 can obtain a variance under § 254.16.

The parties raise various arguments about how best to interpret the corner-store regulation, given the interaction among § 254.13, § 254.14, and § 254.16.  We express no definite view on that issue, instead remanding the case for the BZA to more fully address the question whether intervenors were required to obtain a special exception or instead could proceed by solely obtaining an area variance.  *See generally, e.g.*, *Munson v. D.C. Dep't of Emp. Servs.*, 721 A.2d 623, 627 (D.C. 1998) (remanding to agency for "reasoned interpretation" of statute agency administers).

In sum, we largely uphold the BZA's reasoning.  We vacate the BZA's order and remand the case, however, for further proceedings on two specific topics:  (1) the implications of CYM's ten-year lease for the question whether denial of the requested variance would cause practical difficulties to the owner of the property; and (2) whether intervenors could permissibly proceed by solely seeking an area

variance or whether instead a special exception was required.

*So ordered.*